*403 OPINION OF THE COURT
Anthony J. Sciolino, J.
By notice of motion dated May 25, 1993, respondent Andrew Smith (Smith) moved this court to: (1) direct Smith, Mary Beard (mother) and the subject child, Ebony, to submit to a blood grouping test; (2) vacate the order of filiation herein dated October 4, 1985; (3) terminate his child support obligation for Ebony; and (4) direct the repayment to Smith of all child support paid since entry of the order of filiation.
Following the receipt of the blood grouping test result which excluded Smith as Ebony’s father, and upon the recommendation of the Law Guardian, the court granted Smith’s motion to vacate the order of filiation herein and to terminate his child support obligation and further ordered reimbursement to Smith of all child support paid subsequent to May 25, 1993, the date of his motion.
The issue now to be decided is whether Smith is entitled to reimbursement for support paid between the date of the original order of filiation in 1985, until the date of his motion, May 25,1993.
The order of filiation herein was granted after Smith voluntarily waived his rights to counsel and a blood grouping test and admitted paternity. Smith and mother had two other children before Ebony’s birth for whom he pays support. Smith and mother never married, but had an ongoing relationship. Smith also maintained a relationship with mother’s children, including his own natural children.
Smith determined on or before October 1991 that he was not the father of Ebony, and that he no longer wished to pay support for her. He wrote the Monroe County Department of Social Services (Department) on October 8, 1991 denying paternity. The Department’s timely response on October 21, 1991 indicated "[t]his office does not have the authority to change a paternity matter. I suggest you contact legal counsel regarding this matter.”
Smith filed his motion with this court some 19 months later, on May 25, 1993, seeking to vacate the paternity finding as to Ebony and to terminate his child support obligation. He alleged his partial illiteracy and low income prevented him from understanding his rights in 1985 and from seeking legal redress promptly in 1991.
The Department argues that the Family Court Act and Domestic Relations Law, together with the Federal Child *404 Support Enforcement Act (42 USC § 651 et seq.) as amended in 1986 prohibit Family Court from ordering reimbursement of child support paid during the period prior to the notice of motion. The Department further argues that the defense of laches and estoppel bar such recovery in the event the court finds it has authority to order such reimbursement.
Smith argues these defenses do not apply, since the Department learned from mother in 1988 or 1989 that she believed Thomas Johnson (now deceased), not Smith, was the father. Smith, as previously noted, also informed the Department of his questionable paternity in October 1991. He argues that the Department’s failure to investigate bars it from claiming these defenses.
The Domestic Relations Law and Family Court Act do not expressly address the issue of reimbursement of child support paid under a subsequently vacated order of filiation for the period prior to the filing of an application to vacate, nor does there appear to be any reported case on point. Domestic Relations Law § 236 (B) (9) (b), however, states in pertinent part: "no modification or annulment shall reduce or annul any arrears of child support which have accrued prior to the date of application to annul or modify any prior order or judgment as to child support,” and the Federal Child Support Enforcement Act as amended requires States to adopt:
"[procedures which require that any payment or installment of support under any child support order * * * is * * *
"(C) not subject to retroactive modification * * * except that such procedures may permit modification with respect to any period during which there is a pending petition” (42 USC § 666 [a] [9]).
Taken together, these statutes appear to impose a limit on the court’s authority to order reimbursement for support paid prior to an application for reimbursement. The Federal statute, 42 USC § 666 (a) (9), prohibits retroactive change in child support payments in all States. The legislative history of the statute clarifies its broad sweeping intent to eliminate any retroactive changes in child support. (See, Carelli v Howser, 733 F Supp 271 [SD Ohio 1990]; Flo v Flo, 477 NW2d 383 [Iowa 1991].)
This law prevents fathers or mothers who owe back due child support from traveling to a State that allows retroactive modifications and securing a favorable court order. If some States allowed reimbursement of past child support arising *405 from errant paternity admissions, as Ms. Beard has urged, a similar interstate "forum shopping” problem might arise.
Several public policies are advanced by these statutes. For example, persons with valid claims for a reduction or elimination of support payments are encouraged to make their claims known in a timely manner. This enhances public planning for expenditures of public dollars and enables immediate action to identify who should provide support. Considerable litigation over long past legal claims can thereby be avoided when evidence may not be easily available. In short, the philosophical underpinnings of these statutes appear to incorporate the laches and estoppel arguments advanced by the Department. (See, Thurmond v Thurmond, 155 AD2d 527 [2d Dept 1989].)
Smith had every opportunity to deny paternity in 1985, 1989 or at any other time. His failure to do so cannot be easily excused. The Department is under no obligation to investigate paternity matters settled in court. To require the Department to investigate any doubtful paternity matter would place on it an unreasonable burden. Smith is one of many men who assume fathering responsibilities in the absence of certainty of paternity. As the father of mother’s other children he had every right to do so. Public policy encourages a man to assume such responsibility if he so chooses, especially if it concerns the half-brothers or half-sisters of that man’s children. Smith’s free choice was therefore a fair and reasonable one.
The State should not then interfere in such matters absent compelling circumstances, on suspicion that another male may be the natural father. Where a parenting relationship has been established, the State is loathe to disturb it. (See, Matter of Sharon GG. v Duane HH., 63 NY2d 859.)
By not promptly making his claim, Smith prevented the Department from seeking support from Ebony’s natural father who has since died. The death of the natural father is a factor in establishing the Department’s defense of laches. " 'Laches is not mere delay that works disadvantage or injury; such a defense is deficient if it fails to include allegations showing not only a delay, but also injury, change of position, intervention of equities, loss of evidence, or other disadvantage resulting from such delay.’ ” (Thurmond v Thurmond, supra, at 529.)
*406 After reviewing applicable statutory and case law, the court concludes that it is without authority to grant reimbursement of child support payments for the period prior to May 25, 1993. Respondent’s motion requesting that relief is therefore denied.